## UNITED STATES v. KELLY et al.

(District Court, D. Oregon. April 17, 1901.)

No. 4,522.

1. TREATIES—PROCEEDINGS FOR RESTORATION OF DESERTING SEAMEN—TREATY WITH GREAT BRITAIN.

A treaty made in 1892 between Great Britain and the United States provides that a British consul shall have power to require from the proper authority the assistance "provided by law" in apprehending and restoring deserting British seamen. Rev. St. § 5280, in force at that time, provides that, on application of a consul of any foreign government having a treaty stipulating for the restoration of seamen deserting, it shall be the duty of any court, judge, or commissioner to cause the arrest of a person charged with being a deserting seaman, and, if the facts stated

are found to be true, to deliver up such person, not being a citizen of the United States, to the consul, to be sent back, or to detain him at the request of the consul, and at his expense, until the consul finds opportunity to send him back to the dominions of such foreign government. *Held*, that a commissioner, who, proceeding under such treaty and statute, has adjudged persons to be deserting British seamen, while he may lawfully order their delivery to the consul, or his authorized representative, on board a British ship within the district, had no power to order them restored to the ship "under the directions" of the consul.

2. OBSTRUCTING OFFICERS—EXECUTION OF PROCESS—CONSTRUCTION OF STATUTE.
   Where a United States commissioner, having adjudged certain persons deserting seamen from a British ship, on complaint of a British consul, instead of ordering them delivered to the consul, as required by the treaty and statute, in excess of his authority ordered them restored to the ship "under the directions" of the consul, the marshal, in carrying out the directions of the consul to deliver the seamen to the ship by delivering them to the master on board thereof, acts as the consul's agent, and not in the execution of any legal writ or process, and persons who interfere with him while so acting by forcibly taking his prisoners from his custody are not guilty of a violation of Rev. St. § 5398, which makes it a criminal offense to knowingly and willfully obstruct or oppose an officer of the United States in attempting to execute any legal or judicial writ or process.

Prosecution for the Obstructing and Opposing Officers of the United States in the Execution of Process. On demurrer to information.

John H. Hall, for the United States.
Henry McGinn and C. W. Fulton, for defendants.

BELLINGER, District Judge. This is an information for violation of section 5398 of the Revised Statutes. The information charges the defendants with having, on the ——— day of August, 1900, at the city of Astoria, in this state, knowingly and willfully obstructed and opposed one A. Roberts and one George Maygers, deputy United States marshals for the district of Oregon, with force and arms, by then and there forcibly taking from the custody of the said deputy marshals one Thomas G. Jefferies, one A. Norbin, one N. Johannson, and one Ole Thomson, who had theretofore, to wit, on the 13th day of August, 1900, at the city of Portland, within the district of Oregon, on a hearing and trial then and there had before Edward N. Deady, United States commissioner within said district, been by said commissioner duly adjudged to be deserters from the ship Cedarbank, a foreign vessel, sailing under the flag of Great Britain; and the said commissioner having duly committed the persons named to the custody of the United States marshal for the district of Oregon, to be by him surrendered and restored to the said ship Cedarbank, under the direction of James Laidlaw, the duly-accredited consul of the kingdom of Great Britain and Ireland at the city of Portland, within the state of Oregon; and the said James Laidlaw, as such consul, having, on the ——— day of August, 1900, directed the said United States marshal for the district of Oregon, in writing, to restore the said deserters to the said British ship Cedarbank by delivering them to the master of said vessel, on board thereof, at the city of Astoria; and while the said Jefferies, Norbin, Johannson, and Thomson were still in the lawful custody of the said United States

marshals, the said Kelly and Linville, on the ————— day of August, aforesaid, did, with force and arms, take said Jefferies, Norbin, Johannson, and Thomson from the custody of said United States marshal, etc. To this information the defendants demur.

The statute under which this information is brought provides that every person who knowingly and willfully obstructs or opposes any officer of the United States in serving or attempting to serve or execute any mesne process or warrant, or any rule or order of any court of the United States, or any other legal or judicial writ or process, shall be punished. A treaty between the United States and Great Britain, entered into in 1892, provides that the British consul shall have power to require from the proper authority the assistance provided by law for the apprehension, recovery, and restoration of seamen who may desert from any ship belonging to a citizen of Great Britain. Section 5280 of the Revised Statutes, in force at the time this treaty with Great Britain was entered into, provides, that:

"On application of a consul or vice-consul of any foreign government having a treaty with the United States stipulating for the restoration of seamen deserting * * * it shall be the duty of any court, judge, commissioner, of any circuit court, justice, or other magistrate, having competent power, to issue warrants to cause such person to be arrested for examination. If, on examination, the facts stated are found to be true, the person arrested not being a citizen of the United States, shall be delivered up to the consul or vice-consul, to be sent back to the dominions of any such government, or, on the request and at the expense of the consul or vice-consul, shall be detained until the consul or vice-consul finds an opportunity to send him back to the dominions of any such government," etc.

The treaty gives to the British consul power to require from the proper authorities the assistance provided by law for the apprehension and restoration of deserting seamen. The only assistance provided by law for this purpose is that provided for by section 5280, above quoted. By that section the proper officer has authority to deliver deserting seamen up to the consul, to be sent back to the dominions of the government to which they belong. In this case it is alleged, in effect, that the commissioner committed the deserting seamen to be surrendered and restored by the marshal to the ship Cedarbank, under the direction of the British consul, and that the consul directed the marshal to restore said seamen to the Cedarbank by delivering them to the master of the vessel, on board thereof, at the city of Astoria, and that while in the execution of said order, the defendants, Kelly and Linville, forcibly took the parties named from the marshal's custody. The commissioner had no authority to direct the restoration of the seamen to the ship Cedarbank. The statute only permits their delivery to the consul. I am satisfied that the commissioner had authority to order the delivery of the deserting seamen to the consul on board the Cedarbank at Astoria, either to the consul himself or to some one authorized to act for him in that behalf. Neither the time when nor the place where the delivery is to be made is specified, and I take it that it might have been made, as I have indicated, at Astoria, or at any other place within the limit of the power of the court to order and of the marshal to execute where such delivery was necessary to be effective. But, from what appears ·

in the information, the deputies were in the execution of an order from James Laidlaw, the British consul, which required them to restore the seamen to the master of the vessel,—a thing not within the power of the commissioner to order. At the time of the act charged as a crime, the deputies were acting, not in pursuance of such an order as the statute provides for, but under the direction of the British consul. The officers, therefore, were obstructed, not in the performance of a duty enjoined by law, but in the performance of an act directed by the British consul. The information does not state facts constituting a crime, and the demurrer is sustained.